UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>             v.<br><br>**LEE AYERS,**<br><br>        Defendant. | Crim. No. 8-364 (JDB) |

**MEMORANDUM OPINION & ORDER**

Defendant Lee Ayers is currently detained at Butner Medium II, a medium-security facility in the Federal Corrections Complex in Butner, North Carolina, where he is serving a 72-month sentence for possession with intent to distribute fifty of more grams of cocaine base. See Oct. 22, 2019 Order [ECF No. 121] at 1. His expected release date is March 5, 2022, but he moves for compassionate release, requesting a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) in light of his underlying health conditions and the threat of COVID-19 spreading within his detention facility. See Emergency Mot. to Reduce Sentence Pursuant to the Compassionate Release Statute ("Release Mot.") [ECF No. 123] at 1, 6. The government opposes this motion. See Gov't's Opp'n to Def.'s Emergency Mot. to Reduce Sentence Pursuant to the Compassionate Release Statute ("Gov't's' Opp'n") [ECF No. 129] at 1.

Under the First Step Act of 2018, a court may, upon motion of the Bureau of Prisons or a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); see also USSG § 1B1.13 (setting forth the Commission's policy statement,

1

which requires (among other things) that the defendant's release not pose "a danger to the safety of any other person or to the community"). The movant bears "the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Holroyd, Case No. 1:17-cr-00234-2 (TNM), 2020 WL 2735664, at *2 (D.D.C. May 26, 2020).

Mr. Ayers argues that his underlying health conditions, in combination with the spread of the COVID-19 virus in the federal prisons, are extraordinary and compelling reasons for granting him early release. Release Mot. at 22. He notes that individuals with compromised immune systems are particularly vulnerable to the virus, id. at 36–37, and contends that his health conditions as diagnosed several years ago—a vitamin B-12 deficiency and oxyntic mucosa with autoimmune gastritis—may have developed into gastric cancer by this point, id. at 37–39. He also argues that he is more demographically susceptible, given COVID-19's disproportionate effects on "males and African-Americans." Id. at 39–41. As for the § 3553(a) factors, Mr. Ayers states that he is not a danger to the community because he "will be on strict conditions of supervision upon his release," and the Court could impose additional conditions of supervised release, like home confinement or location monitoring, to mitigate any perceived risk. See id. at 46–47. Under his release plan, he will reside with his mother at her home in Washington, D.C., and have his own room in the basement for self-isolation. See id. at 47.

The government opposes Mr. Ayers's motion on three grounds: (1) Mr. Ayers's failure to exhaust his administrative remedies, see Gov't's Opp'n at 11–21; (2) the absence of any "extraordinary and compelling reasons" for a reduction in his sentence, id. at 21–24; and (3) the § 3553(a) factors weighing against his release, id. at 24–26. The Court agrees with the

government's latter two arguments and thus concludes that, even if Mr. Ayers has exhausted his administrative remedies, his motion nevertheless fails.[1]

First, Mr. Ayers's health conditions do not rise to the level of "extraordinary and compelling reasons" for release, even in light of the spread of COVID-19 in the federal prison system. For guidance on how to interpret this statutory language, both Mr. Ayers and the government turn to Guidelines, see Release Mot. at 8–9; Gov't's Opp'n at 21–22, which define "extraordinary and compelling reasons" in § 3582(c)(1) to include an inmate's "suffering from a terminal illness" or "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, comment. (n.1.(A)). The government acknowledges that "[i]f an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons,'" Gov't's Opp'n at 23 (emphasis added), but argues that Mr. Ayers has failed to satisfy this standard, id. at 24.

The Court agrees. Mr. Ayers suffers autoimmune gastritis and has a history of Vitamin B-12 deficiency, which has resulted in generalized pain, nerve damage, and frequent constipation. Release Mot. at 41–42; see also Ex. C to Gov't's Opp'n ("Medical Records") [ECF No. 131] at

---

[1] Section 3582(c)(1)(A) includes an exhaustion requirement, allowing a defendant to file a compassionate release motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." While the Court cannot assume Article III jurisdiction to deny a motion on the merits, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998), it can assume without deciding even strict claims-processing requirements, see Daniels v. Union Pac. R. Co., 530 F.3d 936, 940 n.9 (D.C. Cir. 2008). "In the District of Columbia, every court that has considered the jurisdictional or non-jurisdictional nature of the [exhaustion] mandate . . . has consistently concluded that section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional," United States v. Johnson, Criminal No. 15-cr-125 (KBJ), 2020 WL 2515856, at *3 (D.D.C. May 16, 2020), and the D.C. Circuit appears to favor that interpretation, see United States v. Smith, 467 F.3d 785, 788 (D.C. Cir. 2006) (reading the Supreme Court's decision in Eberhart v. United States, 546 U.S. 12, 405, 407 (2005) (per curiam) as "call[ing] into question a jurisdictional interpretation of § 3582"). The Court thus turns directly to the merits, which present a clear basis for denial, rather than resolving the antecedent question of exhaustion.

30–31, 35, 39, 41 (diagnosing him with "oxyntic mucosa with autoimmune gastritis").[2] His latest medical records suggest that his constipation has improved. See Medical Records at 1–2. Even if not, however, Mr. Ayers has not demonstrated that his condition "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility," USSG § 1B1.13, comment. (n.1.(A)). Nor has he demonstrated that his condition—in essence, a chronic inflammatory disease of his stomach—makes him uniquely vulnerable to COVID-19. Cf., e.g., United States v. McCarthy, No. 3:17-cr-0230, 2020 WL 1698732, at *2 (D. Conn. Apr. 8, 2020) (granting release to a 65-year-old defendant suffering from chronic obstructive pulmonary disease and asthma); United States v. Curtis, No. CR 03-533 (BAH), 2020 WL 1935543, at *3, 5–6 (D.D.C. Apr. 22, 2020) (granting release where the government and defendant agreed that his advanced multiple sclerosis required assistance "with all activities of daily living" and made him "particular[ly] susceptibl[e] to the worst effects of the virus" (quotation omitted)). His general concerns about contracting the virus "do[] not meet the criteria for extraordinary and compelling reasons for a reduction of his sentence." United States v. Davis, NO. CR18-0132 RAJ, 2020 WL 2767548, at *4 (W.D. Wash. May 28, 2020). If being male alone sufficed, "every inmate at FCI [Butner] would qualify for immediate release or reduction in [his] sentence." Id. at *3.

Mr. Ayers contends that, for all anyone knows, he "might very well have gastric cancer" because autoimmune gastritis is "a precancerous condition," and his detention facility "has refused to provide him with any follow-up care" after his diagnosis last April. Release Mot. at 1–2. But he has not been diagnosed with gastric cancer. And his medical records reveal that he has received treatment for his constipation and other maladies on several occasions over the past year, Medical Records at 1–42, and his recent reports suggest an improvement in his condition, id. at 1–5.

---

[2] For the sake of clarity, the Court uses the pagination generated by CM/ECF for all citations to Medical Records.

Although COVID-19 poses a significant threat to every non-immune person, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Courts have recognized that respiratory conditions, like asthma, or severely disabling conditions, like multiple sclerosis, may provide a basis for release. See McCarthy, 2020 WL 1698732, at *2; Curtis, 2020 WL 1935543, at *3, 6; see also United States v. Gonzalez, No. 3:17-cr-00062 (JAM), 2020 WL 2511427, at *1 n.1 (D. Conn. May 15, 2020) (noting that individuals who are immunocompromised "are at higher risk of severe illness from COVID-19"). But Mr. Ayers has not demonstrated that his health conditions place him in a uniquely vulnerable situation that makes his need for release significantly greater than any other detainee at Butner Medium II.[3]

Second, even if Mr. Ayers's health conditions did qualify as "extraordinary and compelling reasons" for his release, the Court may reduce his term of imprisonment only if the balance of the factors under § 3553(a) favor his release. See Holroyd, 2020 WL 2735664, at *4; see also 18 U.S.C. § 3582(c)(1)(A)(i). But Mr. Ayers's full 72-month sentence remains appropriate and "not greater than necessary" to accomplish the Court's purposes in sentencing him. 18 U.S.C. § 3553(a). The Court is mindful that Mr. Ayers's current sentence was imposed not long ago—in October 2019—when the Court granted his motion under the First Step Act for a reduction in his prior 144-month term of imprisonment. See Oct. 22, 2019 Order at 1. At that time, Mr. Ayers invoked the possibility of compassionate release, see Reply to Gov.'s Resp. to First Step Act Mot. [ECF No. 111] at 2–3, and the Court concluded that such a shortening of his sentence was

---

[3] When Mr. Ayers filed his motion on May 19, there were no positive cases of COVID-19 in Butner Medium II; although, there were cases in the broader prison complex. See Release Mot. at 31. As of May 31, 2020, the Bureau of Prisons has reported two positive cases in Butner Medium II. See Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed May 31, 2020). Given these numbers, the Court is not convinced at this time that a widespread outbreak of COVID-19 will arise in Butner II Medium or that the facility is unequipped to treat those prisoners who do contract the virus.

inappropriate. Although Mr. Ayers pled guilty to unlawful possession with intent to distribute fifty or more grams of cocaine base, he was apprehended only after a high-speed chase, wherein he nearly struck one police cruiser and ultimately crashed his vehicle. See Presentence Investigation Report [ECF No. 47] ¶¶ 11–12. During a subsequent search of the car, police recovered two handguns and over fifty rounds of ammunition. Id. ¶ 13. Mr. Ayers also has several prior felony convictions for violent offenses, including assault with a dangerous weapon (a gun) and possession of a firearm during the commission of a crime of violence. Id. ¶¶ 29–33. Indeed, at the time of the instant offense, he was on supervised release for a prior conviction for unlawful possession of a firearm and ammunition by a previously convicted felon. Id. ¶ 35. In the intervening seven months, the Court's view of the seriousness of Mr. Ayers's conduct and the necessity of his remaining sentence has not changed.[4]

## Conclusion

Accordingly, upon consideration of [123] the Emergency Motion to Reduce Sentence Pursuant to the Compassionate Release Statute, and the entire record herein, it is hereby **ORDERED** that the motion is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Dated: June 1, 2020

---

[4] For similar reasons, the Court is also not convinced that Mr. Ayers is not "a danger to the safety of any other person or to the community." See USSG § 1B1.13(2); see also 18 U.S.C. § 3582(c)(1) (requiring that the resentencing court consider whether a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission").